33630. MILES *v.* ATLANTA COCA-COLA BOTTLING CO.

DECIDED NOVEMBER 21, 1951.

*R. B. Pullen, Brackett & Brackett,* for plaintiff.

*Smith, Kilpatrick, Cody, Rogers & McClatchey, Harry S. Baxter,* for defendant.

WORRILL, J. (After stating the foregoing facts.) ■ While there was evidence for the plaintiff in support of the alleged negligence of the driver of the defendant's truck, there was evidence on behalf of the defendant which, as will be hereinafter shown, authorized the jury to return the verdict in favor of the defendant. The evidence was as follows:

Fred Smith Morgan, the driver of the defendant's truck, testified: "I have been in that employment [truck driver-salesman] for about eighteen and a half years. . . At the time I passed the intersection of Moreland and DeKalb, Mr. Miles [the plaintiff] was directing traffic at that intersection. I went on down the street to Green and Presley [filling station] which is a couple of blocks away on the northeast corner of DeKalb and Elmira Place. . . I stayed there about five minutes, I guess, and completed my business. Then I pulled out into DeKalb. I looked back . . and Mr. Miles was still directing traffic at that intersection. So there being a little up-grade going on to my next customer, well, I traveled most of the way in fourth gear, the truck having five forward speeds. I never did reach fifth gear. Then about fifty yards of the filling station and

grocery store I met a car. Of course, I was driving at the right-hand side of the street, being slowly moving, and I held out my hand to indicate I was going to pull into the middle of the street and make a turn as soon as that traffic was clear. . . I was about 75 to 100 yards from the grocery store and the filling station when I held out my hand, as best I can remember. I had just passed the rise, that crest going down the other side. From Green and Presley Service Station at Elmira to the point where the accident occurred I was traveling about 15 to 20 miles an hour. I pulled in my hand when I started making the turn. I couldn't control the truck with one hand. . . I was driving a KB-6 International which is a ton-and-a-half capacity. It is one of the normal Coca-Cola trucks, delivery trucks like you see on the street. The body of that truck does extend beyond the cab. Approximately from my elbow out would be visible of my arm held out from that truck. When I made my turn I was traveling between 8 and 10 miles an hour. . . From the back wheels on up to the front was in the driveway, the back wheel being right at the curb. The back was into the street. The first time I knew of the fact that the motorcycle was in the vicinity is when I opened the door and saw officer Miles right where I was fixing to stop. . . I heard the tires screech. There was a Merita bread truck parked directly in front of the DeKalb Cash Grocery. With respect to that bread truck, I turned directly behind it. The back end of my truck was standing out in the street beyond the bread truck at the time of the impact, as from the rear wheels up to the back which I say is about 6 feet. The motorcycle hit the left rear fender right at the wheel. . . The street is just wide enough for three lanes of traffic. I was in the center lane where there is not very much room in between us. I would say not over 10 feet. I did not hear the motorcycle blow its horn. I did not hear any horn blow in the vicinity. I did not hear the noise of a motorcycle prior to the screeching of the tires. . . It is hard to hear any ordinary sound above the truck sound of the motor. I was in fourth gear. I was going upgrade, and it wouldn't pull in fifth or high gear is the reason I was in fourth gear. . . I felt the impact, and then I stopped the truck and opened the door to get out to see what was the matter, and he [the plaintiff] was on

the ground right there where I step out the front door. I was still in fourth gear when I heard the impact as I was turning. . . When I made the turn there I was going about 8 miles an hour. As I came along from Candler Street on up to the place of the impact I was going about 15 or 20 miles an hour. I did give a signal of my intention to turn. . . I don't remember telling the policeman that [that he did not remember giving any signal]. . . I said I held out my hand until I got ready to turn and required both hands to make it, to turn the steering wheel. . . When I stopped my truck about 6 feet of the rear was in DeKalb, from the rear wheel back. . . My mirror is about 18 inches out to the side of the truck from the cab. It shows a view right down by the side of the body. The body extends about 8 inches from the cab out, . . I say I looked in the mirror, and I didn't see anybody coming from the rear. . . The motorcycle hit the truck at the rear left fender. . . The reason I say the motorcycle hit the truck was because the fender was bent forward. . . I pulled in my hand right in front of the DeKalb Cash Grocery when I begin to make the left hand turn. I mean that I held out my hand until I started making a turn. . . While my hand was being held out to the left I traveled about 75 or 100 yards."

Emory B. Green testified: "I am a service station owner at 1238 DeKalb Avenue. My station is at the corner of DeKalb and Elmira Street. . . Prior to that occurrence [the collision here involved] I had seen the Coca-Cola truck. He stopped and served us. I did see the motorcycle. When I observed the motorcycle I would say the truck was out close to Candler Street. . . There is a rise down in DeKalb Avenue. The truck in relation to that rise was between my station and the rise. I thought the motorcycle was after someone. . . I could not state the relative speeds of the truck and the motorcycle because the truck was on out a good distance from me. . . That [40 or 45 miles an hour] is my impression of his speed at that time. . . I am experienced with automobiles. . . I would say [the motorcycle was running when he saw it] approximately 40 miles an hour."

R. J. Ray testified: "I did have occasion to witness a collision [here involved]. . . I was going towards Atlanta on DeKalb

Avenue. I met the Coca-Cola truck and then also I met the policeman. The truck was just above the service station there [Butler Service Station] when I met it. . . There is kind of a rise here . . and I went over just a short distance [after passing the vehicles] and I heard a racket, and I just looked through my mirror and looked back. I imagine the speed of the Coca-Cola truck was about 15 or 20 miles an hour. . . I would say the motorcycle was going around 30 to 35 miles an hour. . . I would say the motorcycle was in the neighborhood of 80 feet from [behind] the truck. . . I didn't hear the motorcycle blow its horn. . . I didn't look in my mirror until I heard the crash."

Fred T. Clemmons testified: "Prior to going with Lee Baking Company I owned and operated a service station at 1328 DeKalb Avenue. . . It is next door to DeKalb Cash Grocery. I was standing there in the driveway of my station sweeping the driveway [when the collision in question happened]. . and the Coca-Cola truck was turning in to serve my station and store, and I heard his tires sliding and I looked up and the motorcycle had hit the truck. The policeman had drove right up to my feet almost. I did see the motorcycle hit the truck. The motorcycle came out from behind another truck, and it was a few feet in there and I seen it just as it hit. . . This other truck I speak of was about a foot past it where my driveway begins and the curbing on the right side of the street. It was parked. . . It [the Coca-Cola truck] was turning in. I'd say the front of the truck had crossed the sidewalk. It was in the driveway. The left rear side of the truck was hit. . . We was all trying to figure out how he got past the bread truck to hit the Coca-Cola truck. . . I don't know the distance the motorcycle skidded, not to the foot, I don't. I imagine the way it sounded he skidded 30 or 40 feet. . . I seen when the motorcycle made contact with the Coca-Cola truck. . . If the truck had kept going I would have been between the curbing and the truck on the left side of the truck."

Douglas Spence testified: "I am a meat cutter and manager for Kuniansky & Bulfin in Decatur. I did have occasion to observe a collision [the one here involved]. I was waiting for a trolley to go to Decatur to go to work. . . I did observe the

Coca-Cola truck pass the place where I was. I could have reached out and touched it as it went by. . . In my opinion I would state the Coca-Cola truck was not going faster than 15 miles an hour. Right after the Coca-Cola truck passed I heard a motorcycle popping and looked down the street and there was one coming from Moreland Avenue. . . I would estimate the speed of the motorcycle policeman between 25 or 30 miles an hour. When I first viewed him he was below Elmira, which would make it about a block and a half approximately. When the motorcycle policeman passed my position I would say the truck at that time was right at Candler, possibly 40 feet from where I was standing there. I did observe this truck make a turn going down DeKalb Avenue, right at the crest of the hill there. I didn't see the hand signal at the beginning of the turn, but the hand signal I saw after the policeman had gotten around to the side of the truck and the truck had just started to make the turn. The officer had got up beside the truck, and the truck had already reached a slight angle, and the last I saw of it was the driver's hand out the cab door and the policeman's head. His hand was just straight out turned to the left. I was on the south side of DeKalb towards the railroad. I could not have seen a hand signal sooner if it had been given. I don't think so because I had to wait until the truck got in line with me before I would have been able to have seen it. I did not see any hand signal as the truck started to turn because just as I saw it, right after he made the bend. He was still giving the signal while he was turning. . . He held his arm out as far as I could see it. . . The truck hadn't gotten quite into the middle of the street when I saw his hand out. . . I couldn't see that [how far the truck went after going over the crest of the hill] because it disappeared just over the crest, the truck did. I observed his hand out as far as I could observe, and as far as I could see he still had his hand out. That was only just for an instant."

The evidence above set forth authorized the jury to find that the Coca-Cola truck, before making the turn into the driveway at 8 to 10 miles an hour, was running at a speed not exceeding 15 to 25 miles an hour; that the driver was holding out his hand for a distance of 75 to 80 yards theretofore and pulled it in only when he began making the turn; that a Merita bread truck was

parked on DeKalb Avenue in front of the grocery store between which and the filling station the turn was made; that the Coca-Cola truck turned around the bread truck into the driveway so that all of the truck was out of DeKalb Avenue except about six feet of the rear portion when the impact occurred; that the motorcycle was being driven at a speed estimated by one witness at from 35 to 40 miles an hour and by another at 40 miles an hour, and, without diminishing his speed, the plaintiff turned around the bread truck and, skidding 30 to 40 feet, ran into the rear end of the truck at about the left rear fender, the truck in its progress having been visible all the time to the plaintiff. Consequently, the jury was further authorized to find that even if the driver of the Coca-Cola truck was negligent in not extending, as contended by the plaintiff, his left arm as well as his left hand, or otherwise negligent, the plaintiff could, by the exercise of ordinary care, have avoided the consequences of the driver's negligence or that the plaintiff's negligence was equal to or greater than that of the driver of the Coca-Cola truck, and also that the proximate cause of the plaintiff's injury and damage was his own act in negligently driving his motorcycle and running into the Coca-Cola truck as testified by one or more witnesses for the defendant. The evidence authorizing the verdict of the jury, it can not be disturbed by this court. *Thompson* v. *Fouts*, 203 *Ga.* 522 (3) (47 S. E. 2d, 571); *Davis* v. *State*, 68 *Ga. App.* 296 (2) (22 S. E. 2d, 762); *Metropolitan Life Ins. Co.* v. *Joye*, 77 *Ga. App.* 357, 361 (1) (48 S. E. 2d, 751).

■ In one special ground of the motion for new trial objection is made to an excerpt of the charge of the court on the question of negligence. It is correctly conceded in the brief of the plaintiff in error, however, that if the jury was authorized to find that the driver of the Coca-Cola truck substantially complied with the provisions of the Code, § 68-303 (f), that "An operator intending to start, to stop, or to turn his vehicle to the left or right shall extend the hand and arm horizontally from and beyond the left side of the vehicle," the charge was not error. The driver of the truck testified: "I was about 75 to 100 yards from the grocery store and the filling station when I held out my hand, as best I remember. . . I pulled in my hand when I started making the turn. I couldn't control the truck with

one hand. . . The body of that truck does extend beyond the cab. Approximately from my elbow out would be visible of my arm held out from that truck." The jury was, therefore, authorized to find that the driver so extended his hand and arm, that they were beyond the left side of the truck body as far up as the elbow, although the truck body's side was out beyond the side of the cab in which the driver was, of course, seated, and that he had substantially complied with the statute. The charge was not error for any reason assigned.

*Judgment affirmed. Sutton, C. J., and Felton, J., concur.*